IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACINTO L. BRACMORT,

    Petitioner,

v.                                                        Civil Action No. 2:14cv51
                                                           (Judge Bailey)

RUSSELL A. PERDUE, Warden; MR.
WEAVER; DR. ANDERSON; MS.
LEHMANN; MS. BRANNAN; MR.
NOLTE; FCI GILMORE MEDICAL
STAFF; CHARLES E. SAMUELS, JR.,
Director, Federal Bureau of Prisons;
NEWTON E. KENDIG, Medical Director,
Federal Bureau of Prisons; CHRISTINA
GHERKE; and ANDREA POSSE,

    Respondents.

## REPORT AND RECOMMENDATION

### I. Procedural History

On June 27, 2014, the *pro se* petitioner, an inmate then-incarcerated at FCI Gilmer in Glenville, West Virginia,[1] filed a petition for a Writ of Mandamus, alleging that the respondents were deliberately indifferent to his serious medical needs. Pursuant to a Notice of Deficient Pleading filed the same day, on July 10, 2014, petitioner filed his petition on a court-approved form and filed a motion to proceed *in forma pauperis* ("IFP") with supporting documents. By Order entered July 29, 2014, petitioner was granted permission to proceed IFP and directed to pay an initial partial filing fee ("IPFF"). Petitioner paid the requisite fee on August 21, 2014. By Order entered on September 2, 2014, petitioner was directed to produce copies of his administrative remedies. On September 19, 2014, petitioner moved for an extension of time in which to produce the copies of his administrative remedies; by Order entered September 23,

---

[1] Petitioner is now incarcerated at FCI Fort Dix in Fort Dix, New Jersey.

2014, petitioner's motion was granted. On October 7, 2014, included in a cover letter attached to copies of his administrative remedies, petitioner filed a letter motion to issue subpoenas. On October 20, 2014 and on January 12, 2015, petitioner filed additional copies of administrative remedies.

This case is before the undersigned for a preliminary review and Report and Recommendation.

## II. The Petition

In his petition, petitioner alleges that on an unspecified date in July, 2012, he slipped off a ladder[2] in "B4 102 upper" at FCI Gilmer.[3] He alleges that "on about 7-9-2012," he went to the medical department and told defendant Christina Gherke ("Gherke") about the fall, but she told him "if he was not about to f_____ die, she did not want to hear it." Petitioner asserts that he wrote a BP-8 on her and gave it to his B-4 counselor, Mr. Taylor, but that the BP-8 "disappeared."[4]

Petitioner next alleges that he saw defendant Dr. Eddie Anderson ("Anderson") "allot [sic] of times about his serious medical issues" but that Anderson did not look at his foot to see

---

[2] In a letter from another inmate "to whom it may concern," attached to petitioner's original petition, that inmate stated that he saw petitioner limping "and he explained that he slipped off the ladder getting off of the top bunk." Dkt.# 1-1 at 9.

[3] The petition itself does not explain what injury, if any, petitioner suffered in the July, 2012 fall. Nonetheless, copies of administrative remedies filed later, pursuant to the court's September 2, 2014 Order, reveal that petitioner believes he "may have" fractured his right baby toe in the fall, but was "not sure." See Dkt.# 35 at 10 and 12. Moreover, a June 4, 2013 response by the Warden to an administrative remedy petitioner filed indicates that petitioner suffers from a chronic pain condition, diabetic neuropathy, in his feet, and was complaining of foot pain at FCI Gilmer as early as May 11, 2012, three days after his arrival at FCI Gilmer. He was seen by the physician in sick call on June 29, 2012 for a complaint of extreme foot pain that had been going on since May 8, 2012, but at that time, he did not report any injury. Nonetheless, x-rays of both feet were performed on July 3, 2012, and they were "essentially negative except for a small heel spur . . . [on] the left heel." He began receiving medication to control the diabetic neuropathic pain in his feet at the June 29, 2012 visit. On May 3, 2013, he was evaluated for an increase in the medication; at that time, a repeat x-ray showed a fracture of the right baby toe. He was given a walking boot at that time, and at the time of the June 4, 2013, remedy response, was pending an orthopedic consult. Dkt.# 35 at 13.

[4] Dkt.# 12 at 1 and 4.

2

that it was swollen and "did not properly examine" him at all. Further, he alleges Anderson told him all his test results were normal, when they all showed "complications," and Anderson told petitioner that his fractured foot could not be fixed "because they didn't have the money out of there [sic] budget."[5]

Petitioner contends that defendant Johanna Lehmann, PA-C ("Lehmann")[6] prescribed medication to him after her permit to write prescriptions was expired, and Lehman was "giving . . . [him] medications that don't go together." He alleges that he went to see Lehmann "allot [sic] of times" regarding his fractured foot, but she did not even look at it and he had to "beg for an x-ray." Petitioner alleges that Lehmann also told him that "nothing could be done" about his fractured foot and she only gave him pain pills. Further, he contends that she also assured him repeatedly that all his medical test results were normal but he is still suffering from "accut [sic] chest pains . . . feet pain, peeing blood, shortness of breath, cant [sic] hear out of left ear, and other serious medical issues that Ms. Lehmann knew about[.]"[7]

Petitioner contends that he went to see defendant Mr. Nolte ("Nolte") of the GCI Gilmer Medical Department "allot [sic] of times about his foot fracture" but Nolte told him "he was sorry about his foot being fractured, but there was nothing else that could be done," and all his lab work was normal.[8]

---

[5] Dkt.# 12 at 2 and 4.

[6] An attached November 14, 2013 "Inmate to Staff Message" email from Health Services to petitioner indicates that Lehmann is his primary provider and Dr. Anderson is his physician. Dkt.# 12-2 at 14.

[7] Dkt.# 12 at 2 and 4 - 5.

[8] Dkt.# 12 at 3 and 5.

Finally, petitioner alleges that defendant Andrea Posse, PA-C, "disrespected" him and did not permit him, "a diabetic for over 20 years," to check his blood sugar level.[9]

Petitioner contends that defendant Mr. Michael Weaver of FCI Gilmer's Medical Department "disrespects" him; is aware of all his abnormal test results but denies him care anyway, because it's "outside the budget;" was aware of his fractured foot and would not approve him to "get outside help until over a year;" would not permit him to get therapy even though he knew petitioner needed therapy after surgery;[10] and told him he would not permit him to be treated for all his other serious medical issues "because of the budget." Further, petitioner alleges Weaver told him it was normal for his EKGs to "read abnormal" and told staff to send him back to his housing unit. Petitioner also alleges Weaver took his wheelchair away when he could not stand, making him "suffer walking without a wheelchair"[11] and go up and down stairs after surgery.[12]

Petitioner contends that he filed all of his remedies and spoke with defendant Warden, Russell Perdue ("Perdue") "about 5 times about his Medical [sic] treatment that Medical was not giving him;" that he emailed the Warden "allot [sic] of times also and was ignored." Further, he alleges, defendant Charles E. Samuels ("Samuels"), the Director of the BOP, and defendant

---

[9] Dkt.# 12 at 3 and 5.

[10] The petition itself does not explain what surgery petitioner ever had or when he had it, but among the later-filed copies of administrative remedies is an October 8, 2013 Stonewall Jackson Memorial Hospital Operative Report that indicates that petitioner underwent an open reduction and internal fixation on that date to correct a nonunion of the right 5th metatarsal (Dkt.# 35 at 27); an attached letter from another inmate indicates that on "10-8-13 I was summoned to help Mr. Bracmort up the stairs after his surgery." The inmate stated petitioner put his arm around his neck and he helped petitioner up the steps while another inmate carried petitioner's wheelchair, and that the arrangement "continued for several days." Dkt.# 12-2 at 10.

[11] An attached November 14, 2013 "Inmate to Staff Message" to petitioner indicates that he was still using a wheelchair regularly at the time. Dkt.# 12-2 at 15.

[12] Dkt.# 12 at 5 – 6.

4

Newton E. Kendig ("Kendig"), Medical Director of the BOP, were all aware of his serious medical issues and failed to provide him treatment, causing him to suffer.[13]

Petitioner contends he has or had a fractured foot; is still having to suffer walking around on it; he cannot hear out of his left ear; "still pee[s] blood;" always has acute chest pains, kidney, liver, and eye problems; and is "suffering mentally from FCI Gilmer Medical Staff."

For relief, petitioner seeks a writ of mandamus against the respondents, "directing them to provide petitioner with proper medical attention."[14]

### III. Analysis

Article III of the United States Constitution, limits the jurisdiction of the federal courts to cases or controversies. Therefore, a case becomes moot when there is no viable legal issue left to resolve. See Powell v. McCormick, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the Court unable to grant a party the relief requested, the case must be dismissed as moot. Blanciak v. Allegheny Ludlum Co., 77 F.3d 690, 698-699 (3rd Cir. 1996).

Here, petitioner seeks a writ of mandamus against the respondents, all employees, medical or supervisory staff at FCI Gilmer ("FCI Gilmer respondents") except for respondent Charles E. Samuels, Jr. ("Samuels"), the Director of the Federal Bureau of Prisons, and Newton E. Kendig ("Kendig"), the Medical Director of the Federal Bureau of Prisons, directing them to provide him with proper medical attention. However, a review of the docket indicates that on September 5, 2014, petitioner filed a Notice of Change of Address, indicating that he had been transferred from FCI Gilmer to FCI Fort Dix, in Fort Dix, New Jersey. The Notice was filed on September 10, 2014. (Dkt.# 28). Because the petitioner is no longer at FCI Gilmer, this court

---

[13] Dkt.# 12 at 7.

[14] Dkt.# 12-1 at 8.

cannot direct the FCI Gilmer respondents to provide medical care to the petitioner; thus, there is no relief that this court can offer as to those respondents. Therefore, this case is now moot against all respondents except for Samuels and Kendig.

Pursuant to 28 U.S.C. §1361, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, the Court's authority to issue a writ of mandamus extends only to the issuance of writs necessary or appropriate in aid of its jurisdiction. 28 U.S.C. §1651. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." Kerr v. United States Dist. Court, 426 U.S. 394, 402 (1976). "The party seeking mandamus relief carries the heavy burden of showing that he has no other adequate means to attain the relief he desires and that his right to such relief is clear and indisputable." In re Beard, 811 F.2d 818, 826 (4th Cir. 1987) (internal quotations omitted).

Here, however, petitioner is still not entitled to a Writ of Mandamus against the remaining respondents, because there is clearly another means to attain the relief he desires (Bivens action). The petitioner's allegations clearly pertain to the conditions of his confinement.

The undersigned concludes petitioner has failed to meet the stringent requirements for invoking a Writ of Mandamus.

**IV. Recommendation**

Based on the foregoing, the undersigned recommends that the petition for Writ of Mandamus be **DENIED and DISMISSED without prejudice** to the petitioner's right to file a Bivens action.

Further, the undersigned recommends that petitioner's pending Motion to Issue Subpoenas (Dkt.# 33) be **DENIED as moot**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, **or by February 25, 2015**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet.

DATED: February 11, 2015

/s/      James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE